IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **TYRONE GABB, #K-56693,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 16-cv-1415-NJR |
| | ) |
| **WEXFORD HEALTH SOURCE, INC.,** | ) |
| **DR. JOHN COE, NURSE KIMMEL,** | ) |
| **STEPHEN DUNCAN, and** | ) |
| **MIKE GUYER,** | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Tyrone Gabb, an inmate at Lawrence Correctional Center ("Lawrence"), brings this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff asserts that several Defendants have denied him adequate medical care, while other Defendants subjected him to unsanitary conditions in his cell. The complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its

face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff suffers from osteoarthritis and multilevel hypertrophic spurring. (Doc. 1, p. 5). In early May 2015, Plaintiff went to the health care unit at Lawrence Correctional Center and was seen by Defendant Coe, a medical doctor, for serious chronic back pain. *Id*. Plaintiff explained to Defendant Coe that he had been experiencing severe back pain and was having trouble sleeping. Plaintiff further explained that the two-inch mattress provided to him was exacerbating the pain in his spine and that the medicine he was taking was not helping. *Id*. Defendant Coe responded that he was not a pain specialist and that Plaintiff would just have to deal with the pain. *Id*. Plaintiff claims that during this visit he repeatedly begged Defendant Coe for help and requested that Coe send him to see a pain specialist. Each time Coe responded that there was nothing he could do and that Plaintiff would have to endure the pain. *Id*. at 5-6.

Plaintiff went back to see Defendant Coe a couple months later and again explained that he was experiencing severe back pain and that the medication he was taking for pain was not effective. *Id*. at 6. Coe responded that there were indeed other more effective medications and treatment, but that they were too expensive, and Defendant Wexford "is not going to pay for any of that." *Id*. Coe again told Plaintiff that he would just have to deal with the pain. At this visit, Coe sent Plaintiff away without prescribing him any pain medication. *Id*.

In late September 2015, Plaintiff went back to see Defendant Coe about his severe back pain. *Id*. at 7. Plaintiff again requested a referral to a specialist, to which Coe responded, "Wexford Health Source does not run a pain clinic." *Id*. But Coe did order that an x-ray be taken on Plaintiff's spine. *Id*. A couple weeks later, Plaintiff found out from Coe that the x-ray revealed that Plaintiff also has degenerative disc disease. *Id*. Nonetheless, Coe informed Plaintiff once again that there was nothing more he could do for Plaintiff's pain. *Id*.

Likewise, Plaintiff saw Defendant Kimmel, a nurse at Lawrence, about his back pain on two visits to the healthcare unit in March and April 2015. *Id*. at 9. On the first visit, Plaintiff told Defendant Kimmel that he was experiencing severe back pain and that the medication he had been prescribed was not working. *Id*. When Plaintiff asked Defendant Kimmel if he could see a doctor to discuss his condition, Kimmel responded that she would not refer Plaintiff to see a doctor because she believed that Plaintiff was faking and was not actually in any pain. *Id*. at 9-10. Defendant Kimmel then told Plaintiff that if he didn't like the medication he had been prescribed, he could purchase something different from the commissary. *Id*. at 10.

At the next appointment, Defendant Kimmel immediately advised Plaintiff upon seeing him that she would not be referring him to a medical doctor. *Id*. When Plaintiff again tried to explain to Defendant Kimmel that he was experiencing severe back pain and that the prescribed

medication was not working, Kimmel went off on a rant. *Id*. She called Plaintiff a "dumb ass" and told him that he didn't know what he was talking about. She went on about how inmates are always asking to see a doctor and how they were wasting taxpayer dollars. *Id*. The appointment ended by Defendant Kimmel telling Plaintiff to get out of her face and go back to his cell. *Id*.

Lastly, Plaintiff claims that on June 26, 2015, the toilet in his cell "went out." *Id*. at 12. Plaintiff and his cellmate notified staff and were told that a work order had been placed. *Id*. But Defendant Guyer, the plumber, did not show up for seven days. During that time, Plaintiff and his cellmate were never given any cleaning supplies or a bucket so that they could manually flush the toilet. *Id*. Lawrence was on lockdown during this time, so Plaintiff and his cellmate were unable to leave their cell to use a different toilet. Over the seven days, the toilet filled up with urine and feces, which created an intolerable smell. *Id*. Plaintiff and his cellmate notified Defendant Duncan, warden at Lawrence, of the deplorable conditions, but nothing was done to address the situation for a week.

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court finds it appropriate to reorganize the claims in Plaintiff's *pro se* complaint, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1: Denial of Medical Treatment**

"The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'"

*Rodriguez v. Plymouth Ambulance Serv.,* 577 F.3d 816, 828 (7th Cir.2009) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). To establish an Eighth Amendment medical needs claim, a plaintiff must show that: (1) the medical condition was objectively serious; and (2) the state officials acted with deliberate indifference to his medical needs. *See Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011).

The Seventh Circuit has held that a medical need is objectively "serious" where it has either "been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley,* 414 F.3d 645, 653 (7th Cir. 2005). Moreover, "[a] medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Gayton v. McCoy,* 593 F.3d 610, 620 (7th Cir. 2010)). Here, Plaintiff states that he has been diagnosed with osteoarthritis, multilevel hypertrophic spurring, and degenerative disc disease. As a result, Plaintiff suffers from severe and chronic back pain. These allegations meet the threshold requirement for a "serious" medical condition. The question, then, is whether the Defendants acted with deliberate indifference.

To establish deliberate indifference, Plaintiff "must demonstrate that prison officials acted with a 'sufficiently culpable state of mind.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett*, 658 F.3d 742, 753 (7th Cir. 2011). *See also McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). But, to be held liable, officials must "know of and disregard an excessive risk to inmate health" by being "'aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'" *Greeno*, 414 F.3d at 653 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Plaintiff alleges that he personally made Defendants Coe and Kimmel aware of his painful back condition. In addition, he claims that Defendants Coe and Kimmel repeatedly denied his requests for appropriate treatment and medication to manage his pain, thereby prolonging his pain and suffering. These allegations are sufficient to state an actionable Eighth Amendment deliberate indifference claim against Defendants Coe and Kimmel.

Likewise, Plaintiff asserts that Defendant Wexford, the private corporation that contracts with the Illinois Department of Corrections to provide medical care to Illinois inmates, should be held liable because Defendants Coe and Kimmel acted in accordance with cost-cutting policies set and maintained by Wexford when they denied Plaintiff's constitutional right to adequate medical care. Defendant Wexford may be held liable for the promulgation of a policy or practice, if the policy or practice caused the underlying constitutional violation, as alleged here. *See Perez v. Fenoglio*, 792 F.3d 768, 780 (7th Cir. 2015); *see also Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). As such, Plaintiff may also proceed on his Eighth Amendment deliberate indifference claim against Defendant Wexford.

**Count 2: Unsanitary Cell Conditions**

In a case involving conditions of confinement in a prison, two elements are required to establish a violation of the Eighth Amendment's cruel and unusual punishments clause. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second requirement is a subjective element–

establishing a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer*, 511 U.S. at 837, 842.

Unsanitary conditions similar to those described by the Plaintiff here may state a claim under the Eighth Amendment. *See Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) ("unhygienic conditions, when combined with the jail's failure to provide detainees with a way to clean for themselves with running water or other supplies, state a claim for relief"); *Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (prisoner held in cell for three to six days with no working sink or toilet, floor covered with water, and walls smeared with blood and feces).

In this case, Plaintiff describes ongoing exposure to his own and his cellmate's human waste in their cell for a full week, during which he was subjected to the constant odor of urine and feces. He had to eat in this cell because the prison was on lockdown, and he was unable to wash. These unsanitary and hazardous conditions meet the objective component of a constitutional violation.

As to the subjective component, Plaintiff's alleges that he submitted a work order to Defendant Guyer, the plumber at the facility, regarding the problem. Plaintiff further states that he notified Defendant Duncan, the warden, about the plumbing problem and made him aware of the unsanitary cell conditions, yet Duncan delayed addressing the issues. Prison officials' failure to take adequate steps to prevent inmates' exposure to human waste can amount to deliberate indifference. *See Jackson*, 955 F.2d at 22. Giving liberal construction to Plaintiff's factual allegations, he has stated a claim for relief that shall receive further consideration. Count 2 shall be severed into a separate action, however, because it involves distinct legal and factual issues, and different Defendants, from Count 1.

In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that

unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George,* 507 F.3d at 607, (citing 28 U.S.C. § 1915(b), (g)). Count 2 raises a claim for unsanitary cell conditions. This claim has nothing to do with the claim in Count 1 against Plaintiff's medical providers for failing to properly treat his medical condition, and it is not properly joined in the same action. Count 2 arose from separate transactions and occurrences, involving different parties, and must proceed in a different lawsuit. *See* FED. R. CIV. P. 20(a)(2).

Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever **Count 2** of Plaintiff's complaint, and open a new case, with a newly-assigned case number. A new filing fee shall be assessed for the newly severed case.

### Pending Motions

Plaintiff's motion for recruitment of counsel (Doc. 3) remains pending and shall be referred to a United States Magistrate Judge for a decision.

Because Plaintiff has been granted *in forma pauperis* status, his motion for service of process at government expense (Doc. 4) is unnecessary (service will be ordered below) and, therefore, it is **DENIED as moot**.

### Disposition

**IT IS HEREBY ORDERED** that the following claim, which is unrelated to the medical care claim in **COUNT 1**, is severed into a new case. The new case shall be:

> **COUNT 2** against **DEFENDANTS GUYER** and **DUNCAN** for housing Plaintiff in unsanitary conditions and failing to repair his broken toilet for seven days.

In this new case, the Clerk is **DIRECTED** to file the following documents:

1) This Memorandum and Order,
2) The Original Complaint (Doc. 1),
3) Plaintiff's motion to proceed *in forma pauperis* (Doc. 2), and
4) Plaintiff's motion for the recruitment of counsel (Doc. 3).

Plaintiff **will be responsible for an additional $350.00 filing fee** in this new case.

**IT IS FURTHER ORDERED** that the only claim remaining in this action is **COUNT 1** against Defendants **COE, KIMMEL,** and **WEXFORD HEALTH SOURCE, INC.** for deliberate indifference to Plaintiff's medical needs. This case shall now be captioned as: **TYRONE GABB, Plaintiff, vs. COE, KIMMEL, and WEXFORD HEALTH SOURCE, INC., Defendants**.

**IT IS FURTHER ORDERED** that Defendants **DUNCAN** and **GUYER** are **TERMINATED** from *this* action with prejudice.

As to **COUNT 1,** which remains in this case, the Clerk of Court shall prepare for Defendants **COE, KIMMEL,** and **WEXFORD HEALTH SOURCE, INC.**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending

the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Wilkerson for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a

stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  February 1, 2016**

*[signature]*

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**